# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


**24-226**


**PETER MILLER AND DEVAN MILLER**

**VERSUS**

**SUCCESSION OF CAROL J. AYMOND, JR., ET AL.**


**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 80,881
HONORABLE MARCUS L. FONTENOT, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***


**CHARLES G. FITZGERALD**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***


Court composed of Candyce G. Perret, Jonathan W. Perry, and Charles G. Fitzgerald,
Judges.


**REVERSED.**

**Jeffrey K. Coreil**
**Karly K. Dorr**
**Neuner Pate**
**One Petroleum Center, Suite 200**
**1001 West Pinhook Road**
**Lafayette, LA 70503**
**Tel: 337-237-7000**
**Fax: 337-233-9450**
**Counsel for Defendant-Appellant:**
  **Chantel Aymond, Executrix of the**
  **Succession of Carol J. Aymond, Jr.**


**Christopher M. Ludeau**
**Ludeau Law, LLC**
**P.O. Box 526**
**Ville Platte, LA 70586**
**Tel: 337-363-2388**
**Fax: 337-363-2390**
**Counsel for Plaintiffs-Appellees:**
  **Peter Miller and Devan Miller**

**FITZGERALD, Judge.**

This is an appeal of a sanction award imposed against Chantel G. Aymond, a pro se defendant, under La.Code Civ.P. art. 863.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

The underlying dispute stems from an alleged 2018 verbal, unrecorded agricultural lease between Chantel's father, Carol J. Aymond Jr., and the plaintiffs, Peter Miller and Devan Miller. In simple terms, the lease allowed the Millers to farm approximately 180 acres of Mr. Aymond's land in Evangeline Parish.

Mr. Aymond died in February 2021. Chantel began serving as the executrix of her father's succession in September 2021. She is not a lawyer.

In November 2022, the leased property was sold by Mr. Aymond's succession. Ten months later, on September 8, 2023, the Millers filed a petition for damages against the succession, claiming, among other things, breach of contract. The Millers also named the buyer of the property as a co-defendant.

Six weeks later, on October 24, 2023, Chantel, in her capacity as executrix, responded to the lawsuit by filing a pro se peremptory exception of no cause of action. The exception questioned the legal basis of the claims against the succession, particularly since (1) the property was sold nearly one year earlier, and (2) the buyer of the property was notified of the Millers' farming operations in an addendum to the purchase agreement.

Nine days after filing the exception, Chantel, again as executrix, filed a pro se motion to recuse Judge Marcus Fontenot, who is the trial judge assigned to preside over the Millers' lawsuit. The motion alleged that counsel for the Millers was the former law partner of Judge Fontenot.

In response, on November 6, 2023, the Millers filed a motion for sanctions. The motion sought sanctions against Chantel, as executrix, for her "improper Exception of No Cause of Action and Motion to Recuse in violation of Louisiana Code of Civil Procedure article 863[.]"

Five weeks later, on December 12, 2023, Chantel formally retained counsel to represent the succession. Two days after that, the hearing on the motion to recuse was presided over by Judge Ad Hoc John E. Conery. Although Judge Conery ultimately denied the motion, he specifically stated:

> I don't blame [Chantel] for bringing the motion. I don't find it frivolous. I think she had a right to be a little nervous when she saw who the judge assigned to the case would be and that he was the former partner of, uh, his former partner was handling . . . the case.

Judge Conery found no basis to impose sanctions on Chantel for the motion to recuse. In fact, the written judgment signed by Judge Conery on December 22, 2023, expressly denied sanctions.

Two weeks later, on January 5, 2024, Judge Fontenot signed an order refixing both the trial of the peremptory exception and the hearing on the motion for sanctions. The same day, counsel for the succession sent a letter to the clerk of court purporting to withdraw the exception. Five weeks after that, on February 9, 2024, the succession filed its answer to the petition for damages.

On February 20, 2024, the hearing on the Millers' motion for sanctions was held before Judge Fontenot. Ultimately, Judge Fontenot imposed sanctions against Chantel, personally, in the amount of $1,500.00. In doing so, Judge Fontenot explained that "there is no legal justification for filing" the exception, and that "the exception was filed merely to harass, cause unnecessary delay, and to increase the

cost of litigation." Judge Fontenot's ruling was reduced to a written judgment signed on March 6, 2024. Chantel now appeals this judgment.

On appeal, Chantel asserts the following assignments of error:

The trial court erred and abused its discretion when imposing sanctions on Appellant, Chantel Aymond, the independent executrix of the Succession of Carol J. Aymond, Jr., because [she] did not violate Louisiana Code of Civil Procedure article 863 through the *pro se* filing of an exception of no cause of action, which was not opposed and was voluntarily withdrawn prior to hearing, and the filing of a motion to recuse, which was deemed not frivolous by the *ad hoc* judge.

Alternatively, to the extent sanctions were warranted, which is disputed, the trial court abused its discretion in assessing $1,500.00 in sanctions against the Appellant.

## LAW AND ANALYSIS

A trial court's judgment awarding sanctions under La.Code Civ.P. art. 863 is reviewed on appeal using a mixed standard of review. In other words, the trial court's factual finding that La.Code Civ.P. art. 863 has been violated is reviewed for manifest error. *Acosta v. B&B Oilfield Servs., Inc.*, 12-122 (La.App. 3 Cir. 6/6/12), 91 So.3d 1263. By contrast, the type or amount of the sanction that is imposed by the trial court is reviewed for abuse of discretion. *Id.*

Louisiana Code of Civil Procedure Article 863 is the law at the center of this controversy. In relevant part, La.Code Civ.P. art. 863 states:

B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:

(1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

(2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.

3

(3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

. . . .

D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.

Before awarding sanctions under La.Code Civ.P. art. 863, a trial court must find that at least one of the affirmative duties of paragraph (B) has been violated. However, as cautioned by this court in *Cooks v. Rodenbeck*, 97-1389, p. 8 (La.App. 3 Cir. 4/29/98), 711 So.2d 444, 449, "La.Code Civ.P. art. 863 sanctions are intended for only exceptional circumstances and are not to be used simply because the parties disagree about the correct resolution of a legal matter. . . . The slightest justification for the exercise of a legal right precludes the imposition of sanctions."

Importantly, La.Code Civ.P. art. 863 applies to the signing of pleadings, and the affirmative duties contained in that article are imposed on the attorney or litigant signing the pleading as of the date the document is signed. *Murphy v. Boeing Petroleum Servs., Inc.*, 600 So.2d 823 (La.App 3 Cir. 1992). So "[i]n determining a violation, the trial court should avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the document was signed." *Id*. at 826.

4

Here, the Millers argued that Chantel should be sanctioned because both of her pleadings—the exception of no cause of action and the motion to recuse—violated La.Code Civ.P. art. 863. However, Judge Fontenot did not directly consider the motion to recuse as a basis for sanctions. He acknowledged that Judge Conery had disposed of that issue. Instead, Judge Fontenot's decision to impose sanctions focused on Chantel's peremptory exception. By way of explanation for his ruling, Judge Fontenot reasoned:

> [T]he court does find that there is no legal justification for filing [the exception of no cause of action]. Um, because I said the basis for that pleading was the premise that the plaintiff was suing the defendant for rescinding a lease. In reality, the petition states for breach of-of the lease. Two entirely different things. So the court finds and-and given totality, given this time, given . . . we're five months into it. The Exception was not withdrawn until two and a half months later, long after the Recusal Hearing. Uh, I find that these . . . this . . . the exception was filed merely to harass, cause unnecessary delay, and to increase the cost of litigation. Accordingly, uh, the court hereby sanctions [Chantel] and awards attorney's fees in the amount of $1500. I'm knocking off some of that because some of that was related to the Recusal. Uh, plus any expense and/or court cost to be paid by [Chantel] for this matter.

To summarize, Judge Fontenot found that Chantel's signing of the exception of no cause of action violated the certification requirements set forth in La.Code Civ.P. art. 863(B)(2), because the objections asserted in that pleading were not well grounded in law. Judge Fontenot also found that the exception violated subparagraph (B)(1), because the pleading was presented for the improper purpose of harassment, unnecessary delay, or increased cost of litigation. The discussion below addresses both findings by the trial court.

For starters, in complying with the certification requirements of La.Code Civ.P. art. 863(B)(2), Chantel had an affirmative duty to make an objectively reasonable inquiry into the facts and the law prior to signing the pleading. *Marks v. Marks*, 21-741 (La.App. 5 Cir. 9/28/22), 349 So.3d 1071. And here, neither the trial

5

court nor the Millers suggest that Chantel incorrectly stated the facts in her exception. Rather, both the trial court and the Millers assert that Chantel's exception misstates the legal grounds and theories in the petition for damages by classifying the claim against the succession as one for "recission of a lease" rather than "breach of a lease." So did Chantel make an objectively reasonable inquiry into the law prior to signing the exception?

To this end, the factors that are considered when determining whether a reasonable inquiry into the law was made include (1) the time available to the attorney or litigant to prepare the pleading, (2) the plausibility of the legal view contained in the pleading, (3) the pro se status of a litigant, and (4) the complexity of the legal and factual issues raised. *Brown v. Sanders*, 06-1171 (La.App. 1 Cir. 3/23/07), 960 So.2d 931.

As to the first factor, Chantel was under some degree of time pressure as a responsive pleading was due within twenty-one days of service of the lawsuit. The record shows that suit was filed on September 8, 2023. The record also shows that Chantel's exception was filed on October 24, 2023. But nothing in the record shows when Chantel was served with process.

Now to the second factor. The Millers allege in their petition that the leased property was sold by the succession in November 2022, that the purchasers of the property then evicted them (the Millers) from the premises, and that the succession therefore breached its lease obligation to warrant peaceful possession. In contrast, the basis for Chantel's exception is that the Millers had no cause of action against the succession because the succession no longer owned the property when the eviction occurred. This is factually accurate and a plausible legal position. On the other hand, arguments about Chantel confusing the words "rescind" and "breach"

6

carry little weight in that her legal position remained clear, and there was no evidence of Chantel's intent to deceive or intentionally misstate her position to the court or to the Millers.

As to the third factor, Chantel was a pro se litigant when she filed her exception. We have recognized that "unrepresented parties are generally allotted more latitude than parties represented by counsel as they lack formal training in the law and its rules of procedure." *Magnon v. Magnon*, 23-299, p. 10 (La.App. 3 Cir. 12/6/23), 375 So.3d 1053, 1061. Although this does not automatically absolve a pro se litigant from suffering the consequences of their mistakes in all cases, Chantel's mistakes here do not affect the basis for her exception nor do they cause the Millers any prejudice.

Turning now to the fourth and final factor, the Millers contend that there is no complexity behind the legal and factual issues that are presented. We disagree. This is not a simple breach of contract and eviction case; there are more complicated legal theories and issues in play, such as the unrecorded, verbal lease of agricultural property; a third-party sale; and a post-sale eviction without the involvement of the seller. Chantel correctly notes that, at a minimum, this case involves contract formation, laws involving agricultural leases, the public records doctrine, third-party laws, and the rights of both lessees and buyers.

Based on our review of the record, the evidence clearly shows that Chantel satisfied her obligation to make a reasonable inquiry into the facts and the law. There is simply no evidence to the contrary.

At this point, we need to circle back to Judge Fontenot's second finding: that the exception violated La.Code Civ.P. art. 863(B)(2), because the pleading was presented for the improper purpose of harassment, unnecessary delay, or increased

7

cost of litigation. As stated above, Article 863 applies to the signing of pleadings and imposed an affirmative duty on Chantel at the time the exception was signed. So the question is simple: Is there any evidence showing that Chantel intended to file the exception for an improper purpose at the time she signed the pleading? The answer is no.

In the end, there is no record evidence to support the trial court's finding that the peremptory exception was not well grounded in law. Nor is there any evidence that the pleading was presented for an improper purpose. Indeed, the only evidence adduced at the hearing was a fee statement from the Millers' lawyer. The trial court manifestly erred in imposing sanctions on Chantel.[1]

## DISPOSITION

For the above reasons, the trial court's judgment of March 6, 2024, is reversed. All costs of this appeal are assessed to the plaintiffs, Peter Miller and Devan Miller.

**REVERSED.**

---

[1] Based on this disposition, we pretermit any discussion of Chantel's alternative assignment of error.